**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

JAMES A.J. MAYFIELD,

      Plaintiff,

      vs.                                                                          Civ. No. 19-136 KK

ANDREW SAUL, Commissioner of
the Social Security Administration,[1]

      Defendant.

## MEMORANDUM OPINION AND ORDER[2]

THIS MATTER is before the Court on Plaintiff James Anthony Joseph Mayfield's ("Mr. Mayfield") *pro se* letter to the Court (Doc. 19), filed July 11, 2019, in which he moves the Court to reverse and remand Defendant the Commissioner of Social Security's decision terminating his disability insurance and supplemental security income benefits under 42 U.S.C. §§ 423(f) and 1382c(a)(4)(A). The Commissioner filed a response in opposition to Mr. Mayfield's motion on September 13, 2019. (Doc. 20.) The deadline for Mr. Mayfield to file a reply in support of his motion expired on September 27, 2019, (Doc. 18); and, to date, Mr. Mayfield has neither filed a reply nor requested an extension of time in which to do so. The Court therefore concludes that briefing on Mr. Mayfield's motion is complete. Having meticulously reviewed the entire record and the applicable law, being otherwise fully advised, and for the reasons set forth below, the Court FINDS that Mr. Mayfield's motion is well taken and should be GRANTED.

## I. Legal Standards

---

[1] Andrew Saul was sworn in as the Commissioner of Social Security on June 17, 2019, and is automatically substituted as a party under 42 U.S.C. § 405(g) and Federal Rule of Civil Procedure 25(d).

[2] Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have consented to the undersigned United States Magistrate Judge to conduct dispositive proceedings and order the entry of final judgment in this case. (Docs. 6, 9, 10.)

## A.    Standard of Review

The standard that courts apply in reviewing the Commissioner's decisions is the same whether a decision initially denies benefits or subsequently terminates them. *Hayden v. Barnhart*, 374 F.3d 986, 988 (10th Cir. 2004); *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Specifically, this Court must affirm the Commissioner's final decision unless: (1) "substantial evidence" does not support the decision; or, (2) the Administrative Law Judge ("ALJ") did not apply the correct legal standards in reaching it.[3] *Hayden*, 374 F.3d at 988; *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). The Court must meticulously review the entire record but may "neither reweigh the evidence nor substitute [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008); *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* Although the Court may not re-weigh the evidence or try the issues *de novo*, its consideration of the record must include "anything that may undercut or detract from the [agency]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the agency's] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

---

[3] Judicial review is limited to the Commissioner's final decision, which is generally the ALJ's decision. *Silva v. Colvin*, 203 F. Supp. 3d 1153, 1155 n.1 (D.N.M. 2016). "This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision." *Id.*

The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Thus, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the ALJ . . . must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

### B. Sequential Evaluation Process for Termination of Benefits

This case involves the Commissioner's termination of Mr. Mayfield's benefits under the Social Security Act ("SSA"). The Commissioner may terminate the benefits of an individual previously found to be disabled under the SSA if the physical or mental impairments which formed the basis of the award of benefits have ceased, do not exist, or are no longer disabling. 42 U.S.C. §§ 423(f), 1382c(a)(4). To determine whether termination of benefits is appropriate, the Commissioner has adopted a sequential evaluation process of eight steps for disability insurance benefits ("DIB") and seven steps for supplemental security income ("SSI"). 20 C.F.R. §§ 404.1594(f)(1)-(8), 416.994(b)(5)(i)-(vii). Whether a claimant is engaging in substantial gainful activity[4] is the first step to be considered in determining the claimant's continued eligibility for DIB but is not considered for SSI; otherwise the steps are the same for both types of benefits. *Compare* 20 C.F.R. § 404.1594(f)(1)-(8) (DIB—eight steps), *with* 20 C.F.R. § 416.994(b)(5)(i-vii) (SSI—seven steps).

---

[4] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). "[W]ork may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." *Id.* "Gainful work activity is work activity that you do for pay or profit." 20 C.F.R. §§ 404.1572(b), 416.972(b).

The seven shared steps of the sequential evaluation process for termination of benefits are as follows:

1) Does the claimant have an impairment or combination of impairments which meets or equals the severity of [an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1]?

2) If not, has there been medical improvement?[5]

3) If there has been medical improvement, does the improvement relate to the claimant's ability to do work, *i.e.*, has there been an increase in the claimant's [residual functional capacity ("RFC")] based on the impairment(s) present on the date of the most recent favorable medical determination?

4) If there has been no medical improvement, or if such improvement is not related to claimant's ability to work, do any of the exceptions to medical improvement apply? *See* 20 C.F.R. §§ 404.1594(d)-(e), 416.994(b)(3)-(4) (list[ing] the applicable exceptions).

5) If there is medical improvement related to the claimant's ability to work, are the claimant's current impairments severe when considered in combination?[6]

6) If the claimant's impairments are severe, does the claimant retain the ability to perform his or her past relevant work?

7) If the claimant's impairments are severe and the claimant cannot perform his or her past relevant work, does the claimant nevertheless possess the RFC to perform other work?

*Maestas v. Berryhill*, No. CV 17-679 CG, 2018 WL 3037390, at *2–3 (D.N.M. June 19, 2018);

*Ortega v. Berryhill*, No. 2:16-CV-01074-LF, 2018 WL 1972677, at *2 (D.N.M. Apr. 26, 2018).

The Commissioner bears the burden of proof in a termination-of-benefits review. *Hayden*, 374 F.3d at 991; *Glenn*, 21 F.3d at 987.

---

[5] "Medical improvement" refers to "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, and/or laboratory findings associated with your impairment(s)." 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i).

[6] "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522, 416.922.

## II. Background and Procedural History

It is well-documented and undisputed that Mr. Mayfield, who is now thirty-nine, has had chronic epilepsy since childhood. (*See, e.g.*, AR 415-16.) Mr. Mayfield has his GED and as a young adult held two jobs, one at Wal-Mart and another at a cell phone company; at both jobs, however, flickering lights triggered seizures and he was fired. (AR 39, 58, 324.) On April 30, 2008, the Commissioner found Mr. Mayfield to be disabled and entitled to DIB and SSI beginning on August 1, 2004. (AR 55-60.)[7] Specifically, the Commissioner found that: (1) Mr. Mayfield's date last insured was March 1, 2006; (2) he had not engaged in substantial gainful activity since his alleged onset date; (3) he had the severe impairments of "seizure disorder grand mal type, depression and low average intelligence"; (4) he did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) he had the RFC to perform a full range of work at all exertional levels but with the non-exertional limitations of:

(a)     "avoidance of exposure to machinery, heights and other hazards";
(b)     "avoidance of fluorescent lighting";
(c)     "avoidance of concentrated exposure to vibrations";
(d)     "inability to read and understand basic instruction"; and,
(e)     "moderate impairment in interacting with supervisors and perform[ing] work on a persistent basis during a 40-hour work-week"; and,

(6) considering his age, education, work experience, and RFC, there were "no jobs that exist in significant numbers in the national economy" that he could perform. (*Id.*)

On November 30, 2015, however, the Commissioner determined that Mr. Mayfield is no longer disabled and thus no longer entitled to DIB or SSI. (AR 45-46.) The Commissioner affirmed his decision to terminate Mr. Mayfield's benefits on reconsideration on March 23, 2016,

---

[7] Citations to "AR" are to the transcript of the administrative record filed in this matter on May 13, 2019. (Doc. 16.)

and again on reconsideration after a hearing before a state agency disability hearing officer on June 1, 2016. (AR 47-50.) On June 27, 2016, Mr. Mayfield requested a hearing before an ALJ. (AR 95-97.) ALJ James Burke held an initial hearing on October 18, 2016, at which Mr. Mayfield appeared *pro se* and requested additional time to obtain counsel. (AR 37-39.) The ALJ therefore continued the hearing to June 15, 2017, on which date attorney Michelle Baca appeared on Mr. Mayfield's behalf.[8] (AR 25-34, 130-34.) At the hearing, the ALJ heard Ms. Baca's arguments and Mr. Mayfield's testimony.[9] (*Id.*) Afterward, without objection from Ms. Baca or Mr. Mayfield, the ALJ received and considered records from psychologist Mary S. Loescher, Ph.D., and submitted interrogatories to and received written answers from impartial vocational expert ("VE") Thomas A. Greiner. (AR 11, 309-17, 422-28.)

On January 17, 2018, ALJ Burke issued his decision finding that Mr. Mayfield's disability ended on November 1, 2015 and that he has not become disabled again since that date. (AR 17.) In particular, the ALJ found that: (1) as of April 30, 2008, Mr. Mayfield had the medically determinable impairment of seizure disorder; (2) as of November 1, 2015, Mr. Mayfield had not engaged in substantial gainful activity; (3) Mr. Mayfield did not develop any additional impairments between April 30, 2008 and November 1, 2015; (4) since November 1, 2015, Mr. Mayfield has not had an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) as of November 1, 2015, Mr. Mayfield experienced medical improvement; and, (6) since November 1, 2015, Mr. Mayfield's seizure disorder "has not caused more than a minimal impact on [his] ability

---

[8] The hearing transcript incorrectly identifies Ms. Baca as Ms. Bach. (AR 23, 25, 130-34.)

[9] In his decision, the ALJ incorrectly stated that impartial vocational expert ("VE") Lisa R. Cox also appeared at the hearing. (AR 11; *see* AR 23-34.)

to perform basic work activities," and therefore, he "no longer has a severe impairment or combination of impairments." (AR 11-17.)

In support of these findings the ALJ observed that, according to Mr. Mayfield's medical records and by his own report, he has not had a seizure in several years, because his seizures are controlled by Keppra. (AR 15-17.) The ALJ accorded "little weight" to the opinion of medical consultant Edward S. Bocian, M.D., that Mr. Mayfield should avoid concentrated exposure to hazards due to his seizure history, finding that the opinion was "not consistent with the evidence as a whole."[10] (AR 16.) The ALJ also accorded "little weight" to the opinions of Dr. Loescher, a consultative examiner. (*Id.*) Based on her clinical interview and mental status examination of Mr. Mayfield and his results on the Wechsler Adult Intelligence Scale IV ("WAIS-IV"), Dr. Loescher opined that Mr. Mayfield is mildly to moderately restricted in his ability to understand, remember, and carry out complex instructions and to make judgments on complex work-related decisions, and that it would "possibly be anxiety producing for [Mr. Mayfield] to adapt to a work setting."[11] (AR 422, 428.) The ALJ rejected Dr. Loescher's opinions on the basis that she pointed to no "medically acceptable clinical or laboratory diagnostic techniques" to support them. (AR 16.)

Mr. Mayfield requested review by the Appeals Council, which was denied on December 17, 2018. (AR 1-7.) He then appealed to this Court. (Doc. 1.) Mr. Mayfield attached printouts from various websites regarding epilepsy to his July 11, 2019 letter to the Court. (Doc. 19 at 2-29.) He also attached documentation regarding Keppra, generically known as levetiracetam. (*Id.*

---

[10] In his decision, the ALJ incorrectly referred to Dr. Bocian as Dr. Bocain. (AR 16; *see* AR 391.)

[11] Dr. Loescher also opined that Mr. Mayfield is mildly restricted in his ability to make judgments on simple work-related decisions and "would possibly be mildly impaired in his ability to work with others in a work setting." (AR 422, 428.)

at 31-42.)  Finally, he attached a May 22, 2019 letter from his treating physician, Sue Katz, M.D., who wrote in pertinent part:

> [Mr. Mayfield] has requested a letter to explain his diagnosis of epilepsy.  He has
> [a] history of uncontrolled gran[d] mal seizures prior to treatment with high dose
> levetiracetam.  He reports his last gran[d] mal seizure as 2009.  He continues with
> frequent petit mal seizures.  He estimates these as almost daily, several in a week.
> He also awakens feeling post-ictal on a regular basis.  He estimates this occurs a
> few times monthly.

(*Id.* at 30.)

## III. <u>Analysis</u>

In his letter to the Court, Mr. Mayfield argues that the Commissioner erred in deciding that he is no longer disabled.  (*Id.* at 1.)  More particularly, Mr. Mayfield argues that the Commissioner erred because:  (1) although he takes more than the recommended dose of Keppra, he continues to have focal seizures and wakes up feeling like he has had grand mal seizures in his sleep; (2) he is a "High Risk Employee" and must avoid or block fluorescent lights because they trigger his seizures; (3) other medications have controlled his grand mal seizures for a few years but then stopped working; and, (4) he has severe memory loss which impacts him greatly.[12]  (*Id.*)  The Court will consider Mr. Mayfield's arguments in light of the legal standards applicable to Social Security appeals and will construe them liberally in light of his *pro se* status.  *Lankford v. Wagner*, 853 F.3d 1119, 1121 (10th Cir. 2017); *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

**A.      Substantial evidence supports the ALJ's determination that Mr. Mayfield has not had a seizure in several years**.

---

[12] Mr. Mayfield also observes that he has experienced discrimination at work and school because of his seizures.  (Doc. 19 at 1.)  However, this observation is not legally relevant to the Court's review of the Commissioner's decision regarding whether Mr. Mayfield remains disabled under the SSA.  *See, e.g.,* 42 U.S.C. §§ 423(d)(2)(A), 1382c(3)(B) (disability determination is made without reference to whether claimant would be hired if he applied for a job).

The Court liberally construes Mr. Mayfield's argument that he continues to have seizures as an argument that substantial evidence did not support the ALJ's determination that he has not had a seizure in several years. However, even liberally construed, this argument is without merit. The only evidence in the administrative record that Mr. Mayfield continues to have seizures is his testimony that sometimes he wakes up feeling like he has had a grand mal seizure in his sleep, though he is not sure if he actually has. (AR 28.)

Set against this testimony is extensive record evidence that he has gone for several years without a seizure. His medical records from La Familia Medical Center from June 2014 to April 2017 repeatedly document that Keppra has controlled his seizures for several years. (*See* AR 346 ("has not had a seizure in three years on Keppra," Jun. 6, 2014); AR 343 ("has not had a seizure in about 6 years on Keppra," Apr. 20, 2015); AR 370 ("has not had a seizure in about 6 years on Keppra," Oct. 13, 2015); AR 418 ("has not had a seizure in about 6 years on Keppra," Apr. 29, 2016); AR 415 ("placed on [K]eppra . . . 7 years ago and titrated up to 4000 mg daily and has not had a seizure since then," May 12, 2016); AR 412 ("has not had a seizure in about 7 years on Keppra," Nov. 16, 2016); AR 407 ("has not had a seizure in about 8 years on Keppra," Apr. 11, 2017).[13] In seizure history reports he completed on September 9, 2015 and February 28, 2016, he indicated that the date of his last seizure was September 2009. (AR 205-06, 242-43.) And, at the October 18, 2016 hearing at which he appeared *pro se*, he acknowledged that his records show he has not had a seizure in several years because of his medication. (AR 37.)

Even allowing for the fact that the Commissioner bears the burden of proof at termination of benefits, *Hayden*, 374 F.3d at 991, the foregoing evidence is more than enough to support the

---

[13] Mr. Mayfield's medical records are inconsistent regarding exactly how many years he has gone without a seizure. (*Compare, e.g.*, AR 343 *with* AR 346.) However, based on these records, his most recent seizure occurred no later than 2011, long before the date on which the ALJ found that his disability ceased. (AR 346.)

ALJ's determination that Mr. Mayfield has not had a seizure in several years. The considerable categorical evidence supporting the ALJ's determination amply controverts the scant and equivocal evidence contradicting it. The Court may not and will not reweigh this evidence or substitute its judgment for that of the ALJ. *Bowman*, 511 F.3d at 1272; *Flaherty*, 515 F.3d at 1070. Thus, Mr. Mayfield is not entitled to remand on the basis of his argument that he continues to have seizures.

**B.      Mr. Mayfield is not entitled to a sentence six remand based on the new documents attached to his letter to the Court.**

As previously noted, Mr. Mayfield attached a number of documents to the *pro se* letter he submitted to the Court in support of his motion to reverse and remand. (Doc. 19 at 2-42.) Mr. Mayfield did not present these documents to the Commissioner in the proceedings below. (*See generally* Doc. 16.) As such, the Court will construe Mr. Mayfield's letter and attachments liberally as a request for a sentence six remand requiring the Commissioner to consider the new documents he has proffered.

The United States Supreme Court has "identified two kinds of remands under [42 U.S.C. § 405(g)]: (1) remands pursuant to the fourth sentence, and (2) remands pursuant to the sixth sentence." *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). The sixth sentence of 42 U.S.C. § 405(g) provides in pertinent part that

> [t]he court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405(g); *Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2010). Pursuant to sentence six,

> [t]he district court does not affirm, modify, or reverse the [Commissioner's] decision; it does not rule in any way as to the correctness of the administrative determination. Rather, the court remands because new evidence has come to light

that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding.

*Melkonyan*, 501 U.S. at 98.

For a claimant to be entitled to a sentence six remand, (1) the proffered additional evidence must be "new and not merely cumulative of what is already in the record"; (2) the proffered additional evidence must be "material, that is, relating to the time period for which benefits were denied, and offering a reasonable possibility of changing the [Commissioner's] decision"; and, (3) "the claimant must show good cause for the failure to obtain and present the evidence at the prior hearing." *Heimerman v. Chater*, 939 F. Supp. 832, 833–34 (D. Kan. 1996) (citing *Tirado v. Bowen,* 842 F.2d 595, 597 (2nd Cir.1988)) (quotation marks omitted); *see Nguyen v. Shalala*, 43 F.3d 1400, 1403 (10th Cir. 1994) (court may remand case without ruling on the merits where there is "new and material evidence" and "good cause for failing to incorporate such evidence in the earlier proceeding").

Here, the Court finds that Mr. Mayfield is not entitled to a sentence six remand based on the documents he attached to his letter to the Court. (*See* Doc. 19 at 2-42.) Initially, as the Commissioner observes, the website printouts and medication information attached to Mr. Mayfield's letter are not competent evidence regarding his particular impairments and abilities and as such are not material within the meaning of sentence six. (Doc. 20 at 11.) Moreover, assuming Dr. Katz's May 22, 2019 letter *is* material, Mr. Mayfield has made no effort to demonstrate good cause for his failure to present it to the Commissioner below, nor is such cause apparent from the record. Admittedly, Dr. Katz's letter is dated well after the agency's proceedings concluded on December 17, 2018. (AR 1-3; Doc. 19 at 30.) However, Dr. Katz expressly notes that she wrote the letter because Mr. Mayfield requested it, and, there is no indication that he either made his request in a timely manner or was somehow prevented from doing so. For these reasons, the Court

finds that Mr. Mayfield is not entitled to a sentence six remand on the basis of the new documents attached to his letter to the Court.

## C. The ALJ failed to provide legitimate reasons for the weight he assigned to Dr. Bocian's and Dr. Loescher's opinions.

In his *pro se* letter to the Court, Mr. Mayfield makes a number of factual arguments that are consistent with the medical opinions the ALJ discounted. An ALJ must consider "all relevant evidence in the case record" in making a disability determination. SSR 06-03P, 2006 WL 2329939, at *4 (Aug. 9, 2006).[14] *Inter alia*, the ALJ must consider and discuss the weight he assigns to each medical opinion of record. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). Medical opinions must be weighed using the factors set forth in the pertinent regulations, *i.e.*, (1) examining relationship, (2) treatment relationship, (3) supportability,[15] (4) consistency,[16] (5) specialization, and (6) other factors. 20 C.F.R. §§ 404.1527(c), 416.927(c).[17] "Not every factor for weighing opinion evidence will apply in every case," SSR 06-03P, 2006 WL 2329939 at *5, and the ALJ is not required to "apply expressly each of the six relevant factors in

---

[14] Social Security Ruling 06-03P has been rescinded for claims filed on or after March 27, 2017. *See* SSR 96-2P, 2017 WL 3928298, at *1 (Mar. 27, 2017). However, Mr. Mayfield's claims were originally filed in 2006, (AR 181-88), and the Commissioner determined that Mr. Mayfield was no longer entitled to benefits in 2015. (AR 45-46.) As such, Social Security Ruling 06-03P and the caselaw interpreting it still apply in this case.

[15] Regarding supportability, the pertinent regulations provide that "[t]he better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions. We will evaluate the degree to which these medical opinions consider all of the pertinent evidence in your claim, including medical opinions of treating and other examining sources." 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).

[16] Regarding consistency, the pertinent regulations provide that, "[g]enerally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

[17] The agency has issued new regulations regarding the evaluation of medical opinions for claims filed on or after March 27, 2017. *See* "Revisions to Rules Regarding the Evaluation of Medical Evidence," 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. However, because Mr. Mayfield originally filed his claims in 2006, and the Commissioner determined that he was no longer entitled to benefits in 2015, 20 C.F.R. §§ 404.1527 and 416.927 still apply to this matter. (AR 45-46, 181-88.)

deciding what weight to give a medical opinion." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). However, the ALJ must provide good reasons for the weight he gives an opinion and his explanation must be sufficiently specific to make clear to subsequent reviewers the weight given to the opinion and the reasons for that weight. *See id.*

### 1. Dr. Bocian's opinion

In his letter to the Court, Mr. Mayfield argues that he is a "High Risk Employee" due to his epilepsy and that medications he has taken in the past have worked "for a few years" but then stopped working. (Doc. 19 at 1.) This is consistent with Dr. Bocian's medical opinion that Mr. Mayfield should avoid concentrated exposure to hazards due to his history of seizures. (AR 388.) As previously noted, the ALJ assigned Dr. Bocian's opinion little weight because he found it to be inconsistent with "the evidence as a whole," and particularly with the evidence that Mr. Mayfield's seizures have been controlled by Keppra for several years. (AR 16.) The Court will liberally construe Mr. Mayfield's *pro se* assertions as an argument that the ALJ improperly disregarded Dr. Bocian's opinion.

The Court finds that the ALJ did not follow the correct legal standards in assigning Dr. Bocian's medical opinion little weight. Dr. Bocian explained his opinion that Mr. Mayfield should avoid concentrated exposure to hazards such as machinery and heights by referring to Mr. Mayfield's "seizure *history.*" (AR 388 (emphasis added).) This history, per Dr. Bocian, includes "a generalized tonic clonic seizure diagnosis since birth, likely genetic," past difficulties maintaining a steady phenytoin[18] level, and past reports of "1-4 seizures per month" and "[a]t times . . . 4 seizures within a few days" though at other times "seizure free for up to 7 months." (AR

---

[18] Phenytoin is the generic name for Dilantin, an anticonvulsant that "is used to control certain type[s] of seizures." *See* https://medlineplus.gov/druginfo/meds/a682022.html (last visited Jan. 13, 2020).

391.) More than once in his assessment, Dr. Bocian specifically acknowledged that Mr. Mayfield's seizures "are now controlled [by Keppra] with no seizure activity since 2009." (*Id.*)

Notwithstanding the ALJ's assertion to the contrary, Dr. Bocian's opinion is wholly cognizant of and consistent with the medical record evidence. The Court therefore finds that the ALJ failed to apply the correct legal standards in weighing Dr. Bocian's opinion by "fail[ing] to articulate specific, legitimate reasons for his decision, and equally fail[ing] to sufficiently highlight how [Dr. Bocian's opinion was] inconsistent with the other medical evidence presented in the record." *Hamlin*, 365 F.3d at 1219 (citation and quotation marks omitted).

### 2. Dr. Loescher's opinions

In his letter to the Court, Mr. Mayfield also contends that he has "severe memory loss" that "takes a big toll" on him. (Doc. 19 at 1.) This is consistent with Dr. Loescher's opinions regarding Mr. Mayfield's mental limitations. As previously noted, the ALJ assigned these opinions little weight because he found that Dr. Loescher "did not point to any medically acceptable clinical or laboratory diagnostic techniques to support [them]." (AR 16.) The Court will liberally construe Mr. Mayfield's *pro se* contentions as an argument that the ALJ erred in disregarding Dr. Loescher's opinions.

As with Dr. Bocian, the Court finds that the ALJ did not follow the correct legal standards in assigning Dr. Loescher's psychological opinions little weight. Dr. Loescher explained her opinions that Mr. Mayfield was mildly to moderately limited in his ability to understand, remember, and carry out complex instructions and to make judgments on complex work-related decisions by referring to her report. (AR 422.) In her report, in turn, Dr. Loescher noted that she had not only reviewed the information the agency provided to her, but also conducted a clinical interview and mental status examination of Mr. Mayfield and administered the WAIS-IV to him.

(AR 425.)  She further set forth Mr. Mayfield's results on the WAIS-IV, including two composite scores (one assessing working memory) below the tenth percentile.  (AR 427.)  According to Dr. Loescher, Mr. Mayfield's "scores fall primarily in a low average range of ability and are considered to be a valid indication of his cognitive functioning as measured by this instrument at this time."  (AR 428.)  Thus, notwithstanding the ALJ's assertion to the contrary, Dr. Loescher clearly did point to medically acceptable clinical and laboratory diagnostic techniques to support her opinions.

Moreover, Dr. Loescher's opinions accord with other evidence in the record regarding Mr. Mayfield's mental limitations.  On July 13, 2006, Louis Wynne, Ph.D., having examined Mr. Mayfield and administered psychological tests to him, found that he had "limited" judgment, "average to below average intelligence," and an inability to read and understand basic written instructions.  (AR 330-32.)  And, in his April 30, 2008 decision, ALJ Emanuel Poverstein found that Mr. Mayfield had the severe impairment of "low average intelligence."[19]  (AR 57.)  As with Dr. Bocian, the Court finds that the ALJ failed to apply the correct legal standards in weighing Dr. Loescher's opinions by "fail[ing] to articulate specific, legitimate reasons for his decision, and equally fail[ing] to sufficiently highlight how [Dr. Loescher's opinions] were inconsistent with the other medical evidence presented in the record."  *Hamlin*, 365 F.3d at 1219 (citation and quotation marks omitted).

**D.     The ALJ failed to sufficiently develop the record regarding Mr. Mayfield's continued need to avoid seizure triggers.**

In his letter to the Court, Mr. Mayfield contends that he "cannot be under fluorescent lights because they trigger my seizures and I have to wear a ball cap everywhere I go to block the lights

_____

[19] ALJ Burke failed to explain why he omitted from his decision any acknowledgement, much less consideration, of Mr. Mayfield's previously recognized severe impairments of "low average intelligence" and "depression."  (*Compare* AR 11-17 *with* AR 55-60.)

above me." (Doc. 19 at 1.) He also refers to a list of seizure triggers with his particular triggers highlighted, although he does not appear to have attached most of the list to his letter. (*See id.* at 18.) The Court will liberally construe Mr. Mayfield's *pro se* contentions as an argument that, because he still needs to avoid seizure triggers such as fluorescent lights, the ALJ erred in finding his epilepsy to be non-severe.

The Court finds that the question of whether Mr. Mayfield's epilepsy, though medically controlled, continues to require him to avoid seizure triggers is apparent from the record and that the ALJ therefore had a duty to develop it. An ALJ

> generally must recontact the claimant's medical sources for additional information when the record evidence is inadequate to determine whether the claimant is disabled. Put another way, when the ALJ considers an issue that is apparent from the record, he has a duty of inquiry and factual development with respect to that issue.

*Maes*, 522 F.3d at 1097. "Under normal circumstances, the ALJ may reasonably rely on counsel to identify the issue or issues requiring further development." *Wall v. Astrue*, 561 F.3d 1048, 1063 (10th Cir. 2009) (quotation marks omitted). Also, the issue to be developed must "be substantial on its face," *i.e.*, there must be sufficient record evidence "to suggest a reasonable possibility that a severe impairment exists."[20] *Id.* (quotation marks omitted).

Here, both Mr. Mayfield and his counsel identified the issue of Mr. Mayfield's continued need to avoid seizure triggers in the record below. *Id.* In his February 28, 2016 adult function report, Mr. Mayfield stated that he cannot work under fluorescent lights, and in her September 18, 2015 and March 5, 2016 third-party adult function reports, his mother, Marlene Mayfield, stated

---

[20] These "preconditions" derive in part from the fact that a "claimant bears the burden to prove her disability" at initial determination. *Wall*, 561 F.3d at 1062. The preconditions may be less demanding in termination cases, where the burden of proof is on the Commissioner. *Hayden*, 374 F.3d at 991; *Glenn*, 21 F.3d at 987. However, the Court need not decide this issue in this case because Mr. Mayfield has satisfied the *Wall* preconditions, as further explained herein.

that he cannot stay under fluorescent light for long periods of time, has to wear a hat or sunglasses or look or move away from fluorescent lights, strobes, and store scanners, uses a diffuser for screens, and avoids driving at night due to other vehicles' lights.[21]  (AR 219, 222, 244, 255.)  At the October 18, 2016 hearing at which Mr. Mayfield appeared *pro se*, Mr. Mayfield told ALJ Burke

> the problem that I have, is because everywhere that I'm able to work at has he [sic] fluorescent lights and the doctors have said I can't work under those, the fluorescent lights, because it triggers them and I can't.  I have to at least have a hat on it, at least and — it won't —

at which point, the ALJ cut Mr. Mayfield off.  (AR 38.)  And, at the June 15, 2017 hearing at which Ms. Baca represented Mr. Mayfield, Ms. Baca argued,

> Your Honor, the fact that he has not been in the workforce and when he talks about stress my concern is that when he would get back into a routine of – not get back into it but work in a work setting I think that could also trigger problems with seizures.
>
> ALJ:  Yeah.
>
> ATTY:  The stress of it.

(AR 32.)[22]

Moreover, this issue is clearly substantial.  First and foremost, at least two of the non-exertional limitations that previously rendered Mr. Mayfield disabled derived from his need to avoid seizure triggers, *i.e.*, avoidance of exposure to fluorescent lights and avoidance of concentrated exposure to vibrations.  (AR 57.)  Second, several circumstances evidenced in the record suggest that Mr. Mayfield may still need to avoid seizure triggers even though he has not had a seizure in several years, including that:  (1) he has a long history of tonic-clonic seizures,

---

[21] In his decision, the ALJ found the statements in Ms. Mayfield's March 2016 third-party adult function report to be "generally consistent with the evidence as a whole" and gave them "some weight."  (AR 16-17.)  However, he did not discuss her statements regarding Mr. Mayfield's continued need to avoid seizure triggers.  (*Id.*)

[22] Even the ALJ appeared to recognize that the record in this case was insufficiently developed, suggesting at the June 15, 2017 hearing that the agency should arrange for Mr. Mayfield to have a neuropsychological evaluation.  (AR 26, 32.)  It is unclear why the agency did not follow the ALJ's suggestion.

(AR 222, 262, 324-25); (2) he still carries a diagnosis of generalized idiopathic epilepsy, likely genetic, (AR 324-25, 391, 408, 415-16); (3) he takes a high dose of Keppra, (AR 31-32, 415-16); (4) in the past he has become tolerant of anti-seizure medication and the dosage has had to be increased, (AR 58, 253); and, (5) he still tries to avoid seizure triggers. (AR 38, 219, 222, 244, 255.) This is sufficient record evidence "to suggest a reasonable possibility that a severe impairment exists." *Wall*, 561 F.3d at 1063.

For these reasons, the ALJ had a clear duty of inquiry and factual development regarding whether Mr. Mayfield's chronic epilepsy continues to require him to avoid seizure triggers, even though his seizures have been controlled by Keppra for several years. However, the ALJ failed to develop the record on this point by either re-contacting Mr. Mayfield's medical sources or soliciting the opinion of another acceptable medical source. *Maes*, 522 F.3d at 1097. The Court therefore finds that the ALJ's failure to develop the record was error.

**E.      The ALJ's errors were not harmless.**

The Tenth Circuit applies "harmless error analysis cautiously in the administrative review setting." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). Nevertheless, harmless error analysis may be appropriate where the Court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id.* at 733-34. Here, as explained below, the Court cannot confidently say that no reasonable administrative factfinder, following the correct analysis, could have found Mr. Mayfield's impairments to be severe. Nor can the Court confidently say that no reasonable factfinder, following the correct analysis, could have found that Mr. Mayfield remains disabled. Thus, the Court concludes that the errors described in Subsections III.C. and D., *supra*, were not harmless.

To be "severe," the impairment or combination of impairments must "significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a); *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997). "We have said that this step requires a 'de minimis' showing of impairment." *Hinkle*, 132 F.3d at 1352 (citing *Hawkins v. Chater,* 113 F.3d 1162, 1169 (10th Cir.1997)). "[O]nly those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits without undertaking the subsequent steps of the sequential evaluation process." *Langley*, 373 F.3d at 1123 (quotation marks omitted). Moreover, "the ALJ must consider the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Id.* at 1123-24 (quoting 20 C.F.R. § 404.1523) (quotation marks and brackets omitted).

In the present matter, the ALJ found that, since November 1, 2015, Mr. Mayfield's impairment of seizure disorder "has not caused more than a minimal impact on [his] ability to perform basic work activities." (AR 13-14.) However, applying the correct analysis to Dr. Bocian's and Dr. Loescher's opinions regarding Mr. Mayfield's functional limitations could result in the ALJ giving these opinions greater weight; and, sufficient development of the record could show that Mr. Mayfield still needs to avoid seizure triggers even though his seizures have been controlled by medication for several years. In those circumstances, a reasonable administrative factfinder could certainly find that Mr. Mayfield's impairments remain more than slight abnormalities and continue to significantly limit his ability to perform basic work activities. Thus, the Court cannot confidently say that no reasonable administrative factfinder, following the correct analysis, could have found Mr. Mayfield's impairments to be severe.

Nor is there sufficient evidence in the record to allow the Court to hold that the ALJ's errors were harmless because no reasonable fact finder, following the correct analysis, could have found Mr. Mayfield to be disabled at steps seven and eight of the sequential evaluation process.[23] The Court does note that, in response to the ALJ's interrogatories, VE Greiner indicated that there are jobs in the national economy that could be performed by a hypothetical individual who is unable to understand and follow complex instructions and has mild discomfort dealing with coworkers. (AR 315-16.) However, there is no record evidence regarding whether an individual could perform work that exists in significant numbers in the national economy if he had all of the non-exertional functional limitations Dr. Bocian and Dr. Loescher attributed to Mr. Mayfield. Nor is there any record evidence regarding whether an individual could perform such work if his epilepsy, though controlled by medication, still required him to avoid seizure triggers like fluorescent lighting and stress. Thus, the ALJ's failure to apply the proper standards in weighing the medical opinion evidence, and his failure to sufficiently develop the record, were not harmless and require remand.

## IV.  Conclusion

For the reasons stated above, IT IS HEREBY ORDERED that Mr. Mayfield's motion to reverse and remand the Commissioner's decision terminating his DIB and SSI, as set forth in his *pro se* July 11, 2019 letter to the Court (Doc. 19), is GRANTED. This matter is remanded to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.

---

[23] The Court will use the numbering of the eight-step sequential evaluation process for termination of DIB, rather than the seven-step sequential evaluation process for termination of SSI. *Compare* 20 C.F.R. § 404.1594(f) *with* 20 C.F.R. § 416.994(b)(5).

IT IS SO ORDERED.

_____
KIRTAN KHALSA
United States Magistrate Judge
Presiding by Consent